Nguyen Thi HUONG, et al., Plaintiffs,

v.

The CITY OF PORT ARTHUR, Defendant.

Civil Action No. 1:96CV0200.

United States District Court,
E.D. Texas,
Beaumont Division.

Feb. 24, 1997.

Steven Carl Barkley, Beaumont, TX, for Plaintiffs.

William S. Helfand, Hirsch, Robinson, Sheiness & Glover, Houston, TX, for Defendant.

## MEMORANDUM OPINION

COBB, District Judge.

Before this court is the Defendant's Motion for Summary Judgment, filed by The

City of Port Arthur. Plaintiffs Nguyen Thi Huong et al. claim that Defendant violated Truong's civil rights when the decedent Duc Loi Thanh Truong was fatally shot by a Port Arthur police officer. Plaintiffs are the mother and various family members of the decedent. Plaintiffs have alleged that Truong's death resulted from the use of excessive force by the City of Port Arthur and its police department and that the use of excessive force was caused by the policy or custom of the City of Port Arthur. For the reasons stated below, this court finds that Defendant should prevail as a matter of law on Plaintiffs' claims. This court therefore GRANTS Defendant's motion.

### FACTUAL BACKGROUND

At approximately 4:45 on December 27, 1994, John Leger received a call from the Port Arthur police dispatcher informing him that there was a problem at the Pho Tau Bay restaurant in Port Arthur, Texas. Truong was described as a mental subject possibly armed with a knife. Officer Leger and several other officers responded.

After their arrival at the restaurant, the reporting officers found Truong armed with a butcher knife at the restaurant. Over a period of more than two hours, the officers and family members attempted to have Truong relinquish the knife and leave the restaurant. All such attempts failed. Eventually, Officer Leger was backed up against a door with Truong in front of him. At this time, Truong was holding a pot of hot grease in one hand and the knife in the other. When Officer Leger believed that Truong was drawing the bowl of hot grease back as if he were going to throw it, Officer Leger fired one shot. Officer Leger alleges that he resorted to this measure in order to protect himself from a threat of serious bodily injury and possible death. Truong died as a result of the shooting.

Plaintiffs filed their case in state court. As this is a civil action pursuant to 42 U.S.C.

§ 1983 which invoked the "federal question" jurisdiction of the federal courts, Defendant was entitled to remove the case to this court pursuant to 28 U.S.C. § 1441(b).

### SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate when the moving party is able to demonstrate that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585–88, 106 S.Ct. 1348, 1355–57, 89 L.Ed.2d 538 (1986).[1]

It is unnecessary for the movant to negate elements of the nonmovant's case. Lujan v. National Wildlife Fed'n, 497 U.S. 871, 885, 110 S.Ct. 3177, 3187, 111 L.Ed.2d 695 (1990). If the movant shows that no genuine issues of fact exist, however, the nonmovant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Little v. Liquid Air Corp., 37 F.3d 1069, 1071 (5th Cir.1994) (citing Celotex, 477 U.S. at 325, 106 S.Ct. at 2553–54). The nonmovant's burden is not satisfied with

> "some metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586, 106 S.Ct. at 1356, by "conclusory allegations," Lujan, 497 U.S. at 871–73, 110 S.Ct. at 3179–81, by "unsubstantiated assertions," Hopper v. Frank, 16 F.3d 92 (5th Cir.1994), or by only a "scintilla" of evidence, Davis v. Chevron U.S.A., Inc., 14 F.3d 1082 (5th Cir.1994).

Little, 37 F.3d at 1075. At this point, summary judgment is appropriate if the nonmoving party fails to come forward with suffi-

---

**1.** A "material" fact is one that might affect the outcome of the suit under the applicable substantive law. Anderson, 477, U.S. at 248, 106 S.Ct. at 2510. In order for a dispute to be "genuine," the evidence before the Court must be such that a reasonable jury could return a verdict for the nonmoving party. Id.; see also Judwin Properties, Inc. v. United States Fire Ins. Co., 973 F.2d 432, 435 (5th Cir.1992).

cient facts and law demonstrating a basis for recovery. *Id.* at 1071.

The court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Servs., Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 2076–77, 119 L.Ed.2d 265 (1992); *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14; *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. However, this favorable presumption for the nonmovant exists only when the nonmovant presents an actual controversy of fact. The court will not assume controversy when insufficient facts exist to sustain the party's complaint. *Little,* 37 F.3d at 1075; *see Lujan,* 497 U.S. at 888, 110 S.Ct. at 3188–89.

## ANALYSIS

*I. Plaintiffs' Claims under 42 U.S.C. § 1983*

Plaintiffs claim that The City of Port Arthur, acting by and through its police department, violated Truong's civil rights. A constitutional guarantee exists under the Fourth Amendment against unreasonable seizure through the use of excessive force by a law enforcement officer in the course of making an arrest. *Harper v. Harris Co.,* 21 F.3d 597, 600 (5th Cir.1994). In order to sustain a cause of action for excessive force, a plaintiff must establish that the use of force was "objectively unreasonable." *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). Thus, whether a particular use of force was reasonable or not must be judged from the perspective of a reasonable officer on the scene. *Id.* The test of reasonableness requires:

> careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Graham,* 490 U.S. at 396, 109 S.Ct. at 1872.

Consistent with this opinion, the Fifth Circuit has established a three-part test for consideration of a claim of excessive force brought pursuant to 42 U.S.C. § 1983, requiring a plaintiff to show: "(1) a significant injury which (2) resulted directly and only from the use of force that was clearly excessive to the need and the excessiveness of which was (3) objectively unreasonable." *Johnson v. Morel,* 876 F.2d 477, 480 (5th Cir.1989). The Fifth Circuit further stated that if any of these three elements failed, the plaintiff's claim of excessive force would not succeed. *Id.*

In this case, even if the Plaintiffs could overcome the tough standard that the force used by Officer Leger was clearly excessive, such excessiveness was not objectively unreasonable. Truong had a knife in his hand for more than two hours, threatening to harm himself and others continuously during this time period. He repeatedly refused to put down the weapon even though Officer Leger and other policemen demanded that he do so. In the moments leading up to the actual shooting, Officer Leger warned Truong not to approach him several times. Truong had a knife in one hand and a pot of hot grease in the other. It was when he made a movement as though he were going to throw the grease that Officer Leger, who was backed up against a door, shot him.

Although the force used was deadly force, this does not necessarily make it unreasonable. As the Supreme Court has stated, when an officer has "probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Tennessee v. Garner,* 471 U.S. 1, 11, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985). The Supreme Court went on to state that "if the suspect threatens the officer with a weapon ... deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." *Id.* at 11–12, 105 S.Ct. at 1701. Furthermore, the reasonableness of the amount of force used must be evaluated from the perspective of Officer Leger, who was in a difficult situation and had to act very quickly in order to avoid possible serious physical injury or death. In other words, "[t]he calculus of reasonableness must embody allowance for

the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97, 109 S.Ct. at 1872.

The affidavits of the various police officers submitted by Defendant establish that Officer Leger was in a situation where he had every reason to believe that he might be hurt or killed by either the knife or the pot of hot grease that Truong held in his hands. Considering the circumstances existing at the exact moment when Officer Leger decided to shoot Truong establishes that Officer Leger's use of force was objectively reasonable. Therefore, Plaintiffs do not have any claim for a violation of Truong's Fourth Amendment Constitutional rights.

■ Furthermore, the United States Supreme Court has stated that if a plaintiff has not suffered a deprivation of a constitutional right, it is irrelevant whether the defendant city's policies would have authorized such a deprivation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986). As a result, because Plaintiffs cannot establish a constitutional violation of excessive force in this case, they are barred from asserting a § 1983 civil rights claim against the City based on the policies or customs of the City.

■ Plaintiffs also contend that Defendant is liable for the alleged failure to train or supervise Officer Leger and the other responding officers. The Supreme Court has stated that "inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). In order to hold a municipality liable under a § 1983 theory of inadequate training, a plaintiff must establish: "(1) the training or hiring procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy, and (3) the inadequate hiring or training policy directly caused the plaintiff's inju-

ry." *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir.1996) (citation omitted). Furthermore, the Supreme Court has held that it will not "suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct [since] ... [s]uch a claim could be made about almost any encounter resulting in injury." *City of Canton*, 489 U.S. at 391, 109 S.Ct. at 1206. All that is required for the municipality to prevail in a claim based on inadequate training is compliance with state-mandated training standard for its officers. *Brown v. Bryan Co.*, 53 F.3d 1410, 1424–25 (5th Cir.1995).

■ The affidavit testimony of Chief Gorris establishes that Officer Leger had completed, when hired, all minimum training requirements set by the State of Texas and that the Port Arthur Police Department has policies, customs and practices requiring that excessive force never be used. Therefore, even assuming that the actions of Officer Leger amounted to a constitutional deprivation, this single shooting incident is not enough to establish liability on the part of the City. Plaintiffs have not shown that the City was deliberately indifferent in adopting or failing to adopt any regulations related to the use of force by an officer or that any alleged failure to train or supervise amounted to deliberate indifference and caused the alleged constitutional deprivation of the right to be free from excessive force.

What Plaintiffs do point to in attempting to establish their inadequate training and supervision claim is a written memorandum from Officer Leger to Chief Gorris of the Port Arthur Police Department. In his memorandum, Officer Leger requested permission and funding to attend one of two courses covering the use of chemical and stun munitions as alternatives to the traditional use of firearms. Plaintiffs contend that if the City of Port Arthur had trained its police officers in the use of force alternatives to firearms, Truong would have been subdued without the necessity of any officer firing a weapon.

■ Of great importance is the fact that Officer Leger's memorandum requesting funding to attend the courses is dated May 3, 1995. As previously stated, the incident which gave rise to this lawsuit occurred on December 26, 1994. Even if Officer Leger had been given the money to attend either of the courses, this supplemental training would not have changed what had already happened in December of the previous year. The fact that Officer Leger was told that there was not enough money for him to attend either of the courses had no effect on what had already happened. The fact that a Port Arthur Officer wrote a letter expressing a desire or even a need to gain more knowledge about alternative uses of force and the fact that the response was that the Department would not pay for him to attend such a course does not establish inadequate training or supervision.

## II. Plaintiffs' Common Law Claims

■ The doctrine of governmental immunity applies in Texas, meaning that absent a constitutional or statutory waiver of governmental immunity, a city may not be held liable for any of its actions. *University of Tex. Medical Branch v. York*, 871 S.W.2d 175, 177 (Tex.1994).

■ The Texas Supreme Court has held that the issue of waiver applicable to governmental immunity is one left to the decisionmaking of the Texas legislature. *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 298 (Tex.1976). For the legislature to waive sovereign immunity, it must do so by clear and unambiguous language. *York*, 871 S.W.2d at 177; *Duhart v. State*, 610 S.W.2d 740, 742 (Tex.1980). The Texas Tort Claims Act specifically states that a person having a claim under the Act may sue a governmental unit, including a city, for damages that are allowed by the Act. Tex.Civ.Prac. & Rem. Code Ann. § 101.025, 101.001(2)(B) (Vernon 1986). Damages against governmental units that are allowed by the Act are stated in section 101.021 of the Act:

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

*Id.* § 101.021. As Plaintiffs have failed to plead or prove that Truong's death was caused by a City employee's negligent use of tangible personal property or a motor vehicle or equipment, Plaintiffs cannot circumvent the issue of governmental immunity.

Furthermore, other sections in the Texas Tort Claims Act specifically lead to the conclusion that Plaintiffs' claims cannot stand. For example, the Act excludes a claim that arises "from the failure to provide or the method of providing police or fire protection". *Id.* § 101.055(3). This exception precludes any liability against the City and further mandates the entry of summary judgment on Plaintiffs' claims. *See Barefield v. City of Houston*, 846 S.W.2d 399, 405–06 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

■ In addition, the Act "does not apply to a claim … arising out of assault, battery, false imprisonment, or any other intentional tort." Tex.Civ.Prac. § Rem.Code Ann. § 101.057. Although Plaintiffs have attempted to bring a claim for "negligence" arising from the alleged conduct of Officer Leger, Plaintiffs have described their claims arising from the shooting as the intentional tort of excessive force. Furthermore, regardless of the language used, it is clear that Plaintiffs' claims consist of intentional torts. *See Little v. Schafer*, 319 F.Supp. 190, 192 (S.D.Tex. 1970) (holding that where the essence of a claim under the Texas Tort Claims Act arises from intentional torts, allegations of negligence are insufficient to avoid the § 101.057

exception to liability); *City of San Antonio v. Dunn,* 796 S.W.2d 258, 261 (Tex.App.—San Antonio 1990, writ denied) (holding that there was no waiver of municipal immunity under the Texas Tort Claims Act where claims arose out of the intentional torts of excessive force and false arrest). Therefore, the prevailing case law on this issue mandates that Plaintiffs cannot circumvent the intentional tort exception to waiver of municipal liability by simply pleading negligence when the shooting event upon which they base their claims is actually an intentional tort.

One final exception to liability includes a claim that is based on "the failure of a governmental unit to perform an act that the unit is not required by law to perform" or one that is based on "a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit." TEX.CIV. PRAC. & REM.CODE ANN. § 101.056 (Vernon 1986). Since failure to train and formulation or implementation of policy both relate to the City's method of providing police protection and constitute discretionary acts, such claims fall within this exception to waiver of liability under the Texas Tort Claims Act.

### CONCLUSION

In sum, Plaintiffs have failed to establish a claim for an unconstitutional use of force under § 1983. Moreover, even if a constitutional deprivation were shown, the City cannot be liable since Plaintiffs do not have a claim that any policy or custom of the City caused any alleged constitutional deprivation or that the City was deliberately indifferent in its training and supervision of Officer Leger and the other responding police officers.

In addition, any common law claims are barred by the doctrine of governmental immunity. Since an express waiver of governmental immunity does not exist for the cause of action alleged in this case, the doctrine of governmental immunity bars any suit against the City. Furthermore, there are three explicit exceptions to waiver of liability con-

tained within the Tort Claims Act which are applicable in this case. Because the Act expressly excepts from any waiver of liability claims arising out of the method of providing police protection, discretionary acts such as supervision and training, and intentional torts, Plaintiffs' claims are barred under the Texas Tort Claims Act.

As a result, Defendant has succeeded in showing there is no genuine issue of material fact regarding any of Plaintiffs' claims which would allow recovery. Furthermore, Defendant has shown as a matter of law why the City should prevail against Plaintiffs.

It is therefore ORDERED that Defendant's Motion for Summary Judgment be GRANTED at Plaintiffs' costs.